AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
FEB 14 2018
MATTHEW J. DYKMAN
CLERK

18mr131

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>1006 Paseo De La Cuma, Santa Fe, NM, 87501<br>as more fully described in Attachment A | ) ) ) ) ) ) | Case No. |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A Attached hereto and incorporated herein

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, Attached hereto and incorporated herein

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 287 | False Claims against the Government |
| 18 U.S.C. § 1343 | Fraud by Wire |
| 18 U.S.C. § 1001 | False Statement |

The application is based on these facts:
See affidavit attached hereto and incorporated herein.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Louie Gomez - Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/14/2018

City and state: Albuquerque

*Judge's signature*

Laura Fashing, U.S. Magistrate Judge
*Printed name and title*

## Affidavit for Search Warrant

I, Louie Gomez, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent with the Department of Energy ("Department"), Office of Inspector General (OIG), Office of Investigations (OI), in Albuquerque, NM and have been so employed since May 2016. The Department OIG OI is a Federal agency responsible for conducting criminal investigations involving fraud, waste, and abuse, within the Department, its contractors and subcontractors. I am currently a sworn federal law enforcement officer. Prior to this, I was an Inspector for the Department OIG for three years. I have a Bachelor of Business Administration degree in Accounting from the University of New Mexico and a Master of Accounting degree in Taxation from the University of New Mexico. I am also a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center located in Glynco, Georgia, where I received training in Criminal Law and Procedures. In my capacity as a Special Agent and Inspector, I have assisted and participated in cases regarding federal crimes. I have participated in the execution of at least two other search warrants. Both involved searches of documents and electronic media.

2.     I am submitting this affidavit in support of an application by the United States of America for the issuance of a search warrant to search the home of WILLIAM MONFORD "Monty" WOOD (hereinafter, "WOOD"), located at 1006 Paseo De La Cuma, Santa Fe, NM, 87501 ("SUBJECT PROPERTY"), as more particularly described in Attachment A.

### CRIMINAL VIOLATIONS

3.     As set forth in more detail below, there is probable cause to believe that Title 18 U.S.C. § 287 (Making or Presenting False, Fictitious, or Fraudulent Claims), §1343 (Fraud By Wire, Radio or Television) and §1001 (False Statement or Entries Generally), have been violated and evidence of this violation exists at the SUBJECT PROPERTY described in Attachment A, incorporated herein by reference.

### SOURCES OF INFORMATION RELATED IN THIS AFFIDAVIT

4.     I make this affidavit based on personal knowledge and upon information furnished to me by witness testimony, including Los Alamos National Laboratory ("LANL") employees and other sources. Since this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of a search warrant, I have not included each and every fact known to me concerning this investigation. I have only included those facts I believe are necessary to establish probable cause to search the SUBJECT PROPERTY for evidence of the offenses listed above.

## DETAILS OF INVESTIGATION

5.      This application is for a warrant to search WOOD'S home in Santa Fe, New Mexico. WOOD has been an employee of LANL for approximately 25 years. LANL is owned by the Department. WOOD received his salary from LANL, which is located in the District of New Mexico. As explained in more detail below, there is probable cause to believe that WOOD knowingly made false claims against the government by submitting travel receipts and related documents for reimbursement for business travel expenses that he did not actually incur. There is also probable cause to believe on other occasions WOOD knowingly inflated his travel expenses to receive more reimbursement than he deserved. The travel receipts and related documents purported to show business travel in 2014 to 2017. Investigators have obtained evidence showing that the travel receipts and other documents contained invalid ticket numbers or false confirmation numbers for airline tickets, hotels and rental car expenses. WOOD has told investigators he booked some of his supposedly work-related travel from his home. Therefore, investigators expect to find evidence of his crimes at the SUBJECT PROPERTY. In addition, the travel reimbursement system at LANL requires employees to submit their reimbursement requests and supporting documents electronically by computer. Therefore, there is probable cause to believe WOOD committed wire fraud when he sought reimbursement for false travel expenses. Moreover, because WOOD'S travel receipts and other documents falsely purported business travel, he made false statements to the Government when he submitted those documents.

6.      LANL is a multidisciplinary research institution engaged in strategic science on behalf of national security and located in Los Alamos, NM. LANL applies their core weapons expertise to assess foreign weapons and nuclear programs and threats posed by improvised nuclear devices. The Department owns LANL, its facilities, and all equipment used at LANL. LANL is run by Los Alamos National Security, LLC (LANS), who is managed and operated by the following organizations: University of California; Bechtel National, Inc.; BWXT Government Group, Inc.; URS, an AECOM company. LANS operates LANL as a prime contractor for the Department's National Nuclear Security Administration (NNSA) and supports numerous federal, state, and local government agencies. The Department fully pays for, through the prime contract with LANS, any and all expenses that LANS incurs for its day-to-day operational and equipment needs, including salaries for WOOD and others.

7.      LANL has numerous facilities within its complex, one being, the Los Alamos Neutron Science Center (LANSCE). LANSCE has provided the scientific underpinnings in nuclear physics and material science needed to ensure the safety and surety of the nuclear stockpile into the future.

8.      On February 6, 2018, Department OIG Special Agents (SA), interviewed WOOD. During the interview, WOOD stated that he has been an employee of LANL for approximately 25 years and is currently a Scientist 3 within the LANSCE facility in Los Alamos, NM. WOOD maintains a Department "Q" Top Secret Security Clearance for the work he conducts at LANL's LANSCE Facility. WOOD conducts research, analysis and experiments in the Neutron Science and Technology group and works in the area of weapons and radiographic images. WOOD

works in a controlled and classified area of LANSCE. In addition, some of the work performed by WOOD can be completed at other Department laboratory's to include: Lawrence Livermore National Laboratory (LLNL) in Livermore, CA; Special Technologies Laboratory (STL) in Santa Barbara, CA, and the Nevada National Security Site (NNSS) in Las Vegas, NV. I have also observed WOOD'S security badge showing he has a "Q" Top Secret Security Clearance.

9. On February 2, 2018, LANL's Ethics and Audit group contacted Special Agent Joseph Davila at the Department OIG to report that it appeared WOOD was submitting and receiving travel reimbursements for trips to other Department laboratory's that were not actually taken. The Ethics and Audit Group initially suspected WOOD of wrongdoing because an airline travel receipt contained an invalid ticket number. From July 2014 through December 2017, it appeared that WOOD requested multiple travel reimbursements from LANL by submitting receipts which appear to be fictitious. WOOD submitted airline receipts/tickets, hotel receipts and rental car receipts which LANL's Ethics and Audits verified through the airlines, hotels and rental car companies, did not exist.

10. I conducted an interview with John Schroeder of LANL's Ethics and Audit group, who provided what appeared to be numerous fictitious travel receipts from WOOD for the following companies: American Airlines, Southwest Airlines, Mason Beach Inn (located in Santa Barbara, CA), Hampton Inn and Hertz Rental Car. Schroeder stated when the group inquired about numerous ticket or confirmation numbers with these companies, the group confirmed either the ticket/confirmation numbers did not exist, or the ticket/confirmation numbers were for someone other than WOOD. In one example, LANL's Ethics and Audit group stated Hertz Rental Car confirmed that WOOD had not rented a vehicle with them using his name, driver's license or Hertz rewards number since June 2017. However, WOOD submitted four Hertz Rental Car receipts, which contained his name, to LANL for reimbursement with dates ranging from July 2017 through December 2017.

11. Schroeder also provided receipts submitted by WOOD that appeared to have been altered. Specifically, a receipt had been submitted by WOOD that showed Mason Beach Inn's name at the top of the page. When closely examined, it appears the name may have been pasted on the page, as both the name and surrounding area appear to be blurry, yet the remainder of the page appears to be clear and not blurry. A receipt was also submitted by WOOD from Hertz Rental Car showing what appears to have altered rental dates, rental dollar amounts, amount of rental days and a subtotal. The numbers under these categories appear to be blurry, yet the remainder of the receipt is clear. Additionally, LANL's Ethics and Audit group stated an employee who works in LANL's travel review group, and who is very knowledgeable in travel codes, pointed out that Southwest Airlines ticket number's begin with the "526" prefix. However, WOOD submitted receipts from Southwest Airlines that had ticket numbers not beginning in 526. The Affiant confirmed with Southwest Airlines Fraud Department that all Southwest ticket numbers begin with the prefix "526."

12. During the interview of WOOD on February 6, he stated he himself submitted both his travel authorization and travel receipts, and no other person performed these duties on his behalf. He also clarified that he used both his work computer and his personal home computer to book LANL travel. WOOD stated when he traveled for work, he stayed in his own hotel room and

could not recall ever staying with either a co-worker or acquaintance. When asked about rental cars used for work trips, WOOD also confirmed he used his own rental car while traveling and did not use another's vehicle. When WOOD was questioned how three separate travel receipts he submitted for reimbursement for a single LANL trip to Santa Barbara, CA, in December 2017, showed either the confirmation number did not exist, or belonged to an unrelated individual, WOOD terminated the interview and stated he needed a lawyer.

13.  Department OIG SA's, interviewed William Buttler, a LANL employee who was in charge of LANL experiments at the Special Technologies Laboratory (STL) in Santa Barbara, CA, where WOOD would have traveled to during December 2017. Buttler could not recall ever seeing WOOD in attendance at STL in December 2017. Subsequent to the interview, Buttler provided details as to who was at the STL facility from November through December 2017 for LANL related experiments, and confirmed WOOD was not in attendance. In addition, Buttler stated he asked Dale Turley of STL, who would know if any experimental activities occurred at the STL site, or with STL personnel, and Turley could not recall ever seeing WOOD in December 2017.

## COMPUTERS AND ELECTRONIC STORAGE

14.  As described above and in Attachment B, this application seeks permission to search and seize electronic records that might be found on the SUBJECT PROPERTY, in whatever form they are found. I submit that if a computer or electronic medium is found on the premises, there is probable cause to believe those records will be stored in that computer or electronic medium, for at least the following reasons:

   a. Based on my knowledge and training, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive or deleted. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using readily available forensics tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the hard drive that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   c. Based on WOOD clarifying he used both his work computer and home computer to book his LANL travel, it is believed WOOD's personal home computer may store evidence of false, fictitious, or fraudulent travel claims to LANL. There is reason to believe there is a computer system at the SUBJECT PROPERTY.

15.  Computer storage devices (like hard disks or CD-ROMs) can store the equivalent of millions of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching

authorities to peruse all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical and invasive to attempt this kind of data search on-site.

16. In light of these concerns, I hereby request the Court's permission to seize the computer hardware (and associated peripherals) that are believed to contain some, or all of the evidence described in the warrant, and to conduct an off-site search of the hardware for the evidence described.

17. I recognize that a seizure of a computer(s) may have the unintended effect of limiting WOOD's ability to use his personal computer. In response to these concerns, the agents who execute the search anticipate taking an approach to minimize the inconvenience to WOOD and to minimize the need to seize equipment and data. It is anticipated that, barring unexpected circumstances, this incremental approach will proceed by attempting to create an electronic "image" of those parts of the computer and storage devices that are likely to store the things described in the warrant. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Imaging a computer and storage devices permits the agents to obtain an exact copy of the computer's stored data without actually seizing the computer hardware. The agents or qualified computer experts will then conduct an offsite search for the things described in the warrant from the "mirror image" copy at a later date. If the agents are unsuccessful in creating an image at the SUBJECT PROPERTY, the agents will make every effort to return the computer and any additional storage devices within a reasonable timeframe to WOOD.

## CONCLUSION

18. Based on my training, knowledge, and experience as a Special Agent, on information obtained by myself, and other Special Agents, including interviews of LANL employees and WOOD, along with information set forth above, I believe probable cause exists for the issuance of a search warrant for the premises identified in Attachment A, incorporated hereinto by reference of this affidavit and to search for items listed in Attachment B, incorporated hereinto by reference of this affidavit.

19. Established through an interview of WOOD, the Department OIG OI confirmed his residence is currently at 1006 Paseo De La Cuma, Santa Fe, NM, 87501. WOOD also clarified that he used a personal computer to book LANL travel.

20. Items seized will be considered evidence in the ongoing investigation of violations of Title 18 U.S.C. § 287 (Making or Presenting False, Fictitious, or Fraudulent Claims), §1343 (Fraud By Wire, Radio or Television) and §1001 (False Statement or Entries Generally).

2/14/2018
Date

Louie Gomez
Special Agent
United States Department of Energy
Office of Inspector General

SUBSCRIBED AND SWORN TO before me this 14th day of February, 2018.

United States Magistrate Judge

## ATTACHMENT A

The premises to be searched is the residence of WILLIAM MONFORD "Monty" WOOD located at 1006 Paseo De La Cuma, Santa Fe, NM, 87501. The residence has a dirt/gravel drive way that goes down onto the property where the residence is located. There is a tree and shrub line that gives the residence seclusion from the Paseo De La Cuma road. In addition, there is a mail box with the numbers 1006 at the entry of the drive way. See attached photo incorporated herein by reference.





## ATTACHMENT B

Items to be searched and seized as evidence of a violations of 18 U.S.C. § 287, § 1343 and § 1001 are as follows:

1.    All records, in any form, including paper and electronic records, relating to violations of 18 U.S.C. § 287, § 1343 and § 1001 involving WILLIAM MONFORD "Monty" WOOD including:
    a) Data related to Los Alamos National Laboratory (LANL) travel
    b) Data related to the Concur travel system used at LANL
    c) Receipts or invoices for travel related to LANL work trips
    d) Dates and times of work performed at Lawrence Livermore National Laboratory (LLNL) in Livermore, CA; Special Technologies Laboratory (STL) in Santa Barbara, CA, and the Nevada National Security Site (NNSS) in Mercury, NV
    e) Emails related to LANL travel and the Concur travel system

2.    Any computers or electronic media (hereinafter, "MEDIA") that were or may have been used as a means to commit the offenses described on the warrant including:
    a) Providing falsified travel receipts for reimbursement

3.    For any computer hard drive or other MEDIA that is called for by this warrant, or that might contain things otherwise called for by this warrant:
    a) Evidence of user attribution showing who used or owned the MEDIA at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;
    b) Passwords, encryption keys, and other access devices that may be necessary to access the MEDIA;
    c) Documentation and manuals that may be necessary to access the MEDIA or to conduct a forensic examination of the MEDIA.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies).